## KIRCHNER, Respondent, v. THE CONCORD INVESTMENT COMPANY, Appellant.

**St. Louis Court of Appeals, October 22, 1907.**

1. **CONTRACTS: Parties.** A contract between the owners of a building and contractor whereby the latter undertook to underpin a wall of the owners, under the supervision of a certain architect, naming him, was not a contract of hire between the owners and the architect.

2. **PRACTICE: Instruction Ignoring Defense.** To give instructions authorizing a verdict for plaintiff, without taking into account a defense upon which the defendant offered substantial evidence, is error.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*E. W. Banister* for appellant.

*Albert C. Davis* for respondent.

(1) According to the evidence of respondent, appellant requested him to perform the services, and the law implies a promise to pay a reasonable compensation. Instruction number one for respondent was therefore proper. Crole v. Thomas, 19 Mo. 70; Dougherty v. Whitehead, 31 Mo. 255. (2) Appellant accepted the service of respondent by paying the contractor (Dwyer) on the order of respondent after the latter had superintended the work and seen that it was finished. Instruction numbered two for respondent was therefore proper under appellant's testimony that it did not originally request the services. Smith v. Myers, 19 Mo. 434.

GOODE, J.—This action is to recover on a demand for services rendered by respondent to the appellant company as an architect. The demand grew out of the following facts: In the year 1905 the Balmer & Weber Music Company erected a building on Olive street in St. Louis adjacent to a building belonging to the Concord Investment Company. To put in the foundation for said new building, it was necessary to excavate fifteen feet below the sidewalk and to do this would endanger the wall of the building belonging to the Concord Company. Respondent had charge as architect, of the erection of the Balmer & Weber building, and notified W. J. Holbrook, president of the Concord Investment Company, that the west wall of said company's house ought to be underpinned. The matter ran along for a few days while the appellant company was considering whether it would underpin its wall or take it down and have a new wall built. Kirchner procured estimates for both jobs from a contractor by the name of Dwyer, and finally a written contract was entered into by appellant and Dwyer, that the latter should underpin appellant's west wall for $977.50. The clause of the contract with which we are concerned in the present case is as follows:

"The party of the second part convenants and agrees to and with the party of the first part, to do the underpinning under a wall, being the west wall of the property on the southwest corner of Tenth and Olive streets, and adjoining the property now being improved by the Balmer & Weber Music House Company, under the supervision of the architect, H. W. Kirchner."

Dwyer underpinned the wall and was paid for it, but Kirchner claims appellant still owes him a fee for supervising the underpinning work, and the controversy is over his claim. As to this matter there is a conflict of testimony between Kirchner and W. J. Holbrook, president of the appellant company and George H.

Blackwelder. Whatever arrangement the parties had was made between Kirchner and Holbrook, and Blackwelder overheard the conversation. According to Holbrook and Blackwelder, there was a positive agreement between Holbrook and Kirchner that the $977.50 to be paid Dwyer for the underpinning, should cover the entire cost of the work and there should be no charge for Kircher's services in supervising — that Kirchner agreed there should be none. The latter denies he so agreed and contends he rendered services in overlooking the underpinning at the request of Holbrook and, therefore, should be paid a reasonable compensation on an implied assumpsit. The jury having returned a verdict for respondent, this appeal was taken. Several instructions given at respondent's instance are complained of and one of them, we think, contained a radical error. The court instructed the jury that by the terms of the contract between the Concord Investment Company and Dwyer, Kirchner was employed to supervise Dwyer's work.. The only clause of the contract which could be relied on to have such an effect is the one we have quoted and certainly it did not amount to an employment of Kirchner in the sense that he was to be paid for his services, if what Holbrook and Blackwelder said is true. In fact, the contract between Dwyer and appellant was not a contract of hiring between Kirchner and appellant. Whatever contract, express or implied, there was between the company and Kirchner stood on other facts. The theory of appellant, which there is evidence to support, is that Kirchner, who was in charge of the work on the Balmer & Weber building, was interested in having said work expeditiously and safely done, and therefore called Holbrook's attention to the menace to appellant's wall from the excavating, offered to contract with Dwyer to underpin it and undertook to see that the work was properly done without any compensation to him. We can conceive of no

theory on which the contract between Dwyer and appellant would justify the court in declaring Kirchner was employed, in the sense of being hired for pay, by said contract to supervise the work Dwyer was to do as contractor. The purpose of the clause in the contract touching this matter was simply to bind Dwyer to work under the supervision of Kirchner as architect; but it is obvious that Kirchner might act as architect either under a contract of hiring with appellant, which would entitle him to compensation, or under an arrangement by which he was to supervise the work gratuitously while he was on the ground supervising the work of the Balmer & Weber building. This written contract was, at most, but a circumstance going to show Kirchner was hired by appellant. All the instructions given for respondent left the defense out of view; whereas it would have been better to take it into consideration in all of them. The error in the fourth instruction was most prejudicial in effect and the judgment will have to be reversed and the cause remanded. It is so. ordered. All concur.